PETRO STOPPING CENTERS, INC. and Charlie's Knife Shop, Appellants,

v.

OWENS–CORNING FIBERGLAS CORP., Appellee.

No. 08–94–00338–CV.

Court of Appeals of Texas, El Paso.

Aug. 24, 1995.

Ken Slavin, Brower & Slavin, El Paso, for appellant.

Joe Horlen, Rodgers Miller Ellison & Holt, P.C., Byran, for appellee.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

CHEW, Justice.

This is a products liability case. Appellants, Petro Stopping Centers, Inc. and Charlie's Knife Shop ("Petro Stopping Center"), appeal from a summary judgment in favor of Appellee, Owens–Corning Fiberglas ("Owens–Corning"), on its statute of repose affirmative defense. We reverse the decision of the trial court and remand for a trial upon the merits.

The Petro Stopping Center, originally constructed in 1975, is a 24–hour truck stop with retail shopping center, showers, restroom facilities, lounge, theater, laundry facilities, kitchens, and 250–seat restaurant. In the original construction, a kraft-faced fiberglass insulation, allegedly manufactured by Owens–Corning, was attached by E–Z tight Corporation to the bottom of the roof trusses throughout the complex. In 1980 and 1988, additions to the original structure used the same type and brand of insulation.

In 1989, the restaurant kitchen was renovated. During installation of two new stainless steel cooking hoods, an area of fiberglass insulation was exposed. As the hoods were installed, welding sparks were observed coming from inside and outside the hoods. Shortly after the welding was completed, the fiberglass insulation caught fire. Uncontained, the fire totally destroyed the entire building within minutes.

Appellants brought suit against Owens–Corning on December 28, 1990, in strict product liability. Owens–Corning filed a Motion for Summary Judgment alleging that the installation of the insulation was substantially completed more than ten (10) years prior to the filing of this suit and, therefore, Appellants' cause of action was barred by Section 16.009 of the Texas Civil Practices & Remedies Code, (the statute of repose). Furthermore, Owens–Corning argued that there was no evidence before the trial court of willful misconduct and/or fraudulent concealment by Owens–Corning. The trial court entered final summary judgment in favor of Owens–Corning on both counts and ordered that Appellants take nothing by their suit.

The sole issue we consider here is whether Section 16.009 of the Texas Civil Practices & Remedies Code applies to materialmen, i.e. " 'a person who does not engage in the business of building or contracting to build homes for others, but who manufactures, purchases or keeps for sale materials which enter into buildings and who sells or furnishes such material without performing any work or labor in installing or putting them in place.' " *Williams v. U.S. Natural Resources, Inc.*, 865 S.W.2d 203, 208 (Tex. App.—Waco 1993, no writ), quoting *Reddix v. Eaton Corp.*, 662 S.W.2d 720, 724 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.).

Section 16.009 provides:

(a) A claimant must bring suit for [injury, damage, or loss to real or personal property] against a person who constructs or repairs an improvement to real property not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement. TEX.CIV.PRAC. & REM. CODE ANN. § 16.009(a) (Vernon 1986).

The original repose statute was enacted in 1969, as Article 5536a, and limited claims "against any registered or licensed engineer or architect. . . . " Act of June 2, 1969, 61st Leg., R.S., ch. 418, § 1, 1969 TEX.GEN.LAWS 1379. This original statute, now Section 16.008 of the Civil Practice and Remedies

Code, is only material here to understand the legislative intention to subsequently expand the statute's coverage. See TEX.CIV.PRAC. & REM.CODE ANN. § 16.008. In 1975, the legislature amended 5536a by adding Section 2, which extended protection to "any person performing or furnishing construction or repair of any ... improvement [to real property]...." Act of May 20, 1975, 64th Leg., R.S., ch. 269, § 2, 1975 TEX.GEN.LAWS 649. The sponsor of House Bill 1105, which was codified as 16.009(a), explained in House debate that the purpose behind the statute was to avoid the situation "where a contractor builds a building or a construction project and he has a potential liability on that until the day he dies." Hearing on Tex. H.B. 1105 on the Floor of the House, 64th Leg., R.S. ch. 269, § 2 (April 22, 1975). The new bill was intended to provide "contractors" the same protection provided to architects and engineers under Section 16.008. *Id.* The Committee on the Judiciary Minutes clearly establishes that the statute was intended to protect only those who actually constructed or installed an improvement on the premises. Texas House of Representatives Committee on the Judiciary Minutes, 64th Leg. R.S. ch. 269, § 2 (April 22, 1975).

■ This legislative intent was recognized by the Texas Supreme Court when answering a certified question from the Fifth Circuit Court of Appeals in *Sonnier v. Chisholm–Ryder Co., Inc.*, 38 TEX.S.CT.J. 1028, 1033, —— S.W.2d ——, —— [1995 WL 675886] (July 7, 1995), where the Court specifically held that an off-site manufacturer of personalty used in the construction of an improvement may [not] claim the protection of Section 16.009. *Sonnier,* 38 TEX.S.CT.J. at 1034, —— S.W.2d at —— (reasoning that "[p]ersonalty is not an improvement until annexed to realty; the manufacturer of personalty does not 'construct' an improvement because there is no relationship with the annexation."). *Id.* at 1032, at ——. See also *Williams,* 865 S.W.2d at 209, ("whether a defendant manufactures all or only a component part of a product is immaterial in determining coverage [under the statute of repose]). Rather, the critical inquiry under the definition of materialman is whether the manufacturer actually installed the product on the realty—

i.e., whether the manufacturer actually constructs an improvement to realty as the statute requires."); *Dayton Independent School Dist. v. U.S. Mineral Products, Co.,* 800 F.Supp. 1430, 1434 (E.D.Tex.1992).

■ Owens–Corning may have manufactured the kraft paper insulation at issue here, and that insulation was certainly part of the realty in both the original construction and subsequent improvements; however, Owens–Corning was never an actor in the actual construction of the original Petro Stop or any of the subsequent renovations or remodeling. The statute only grants repose to the direct actors in the construction or repair of an improvement to real property. The Legislature has not granted repose to materialmen, suppliers, manufacturers, or producers who are not directly involved with the construction, repair, or installation of an improvement to real property. In light of direct conflict with this holding and disapproval in *Sonnier,* we expressly overrule our prior opinion in *Rodarte v. Carrier Corp.,* 786 S.W.2d 94 (Tex.App.—El Paso 1990, dism'd by agr.).

We therefore conclude that Owens–Corning was not a constructor or repairer of an improvement to real property as a matter of law and the trial court, therefore, erred in granting summary judgment on that ground. We sustain Point of Error One, reverse the summary judgment, and remand the cause for a trial on the merits without reaching the remaining points of error.